

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BOBBY DICKERSON,<br>    PLAINTIFF,<br><br>v.<br><br>CAROLYN COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>    DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. § 4:14-CV-729-A |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I.   STATEMENT OF THE CASE

Plaintiff Bobby Dickerson ("Dickerson") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").  Dickerson applied for SSI on November 13, 2012.  (Transcript ("Tr.") 30, 143-50.)  After his application for benefits was denied initially and on reconsideration, Dickerson requested a hearing before an administrative law judge

1

("ALJ"). (Tr. 30, 105-07.) The ALJ held a hearing on September 25, 2013, and she issued an unfavorable decision on October 24, 2013. (Tr. 30-41, 45-66.) On January 30, 2014, the Appeals Council denied Dickerson's request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 18-21.) Dickerson subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from

returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experiences. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets this burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F. 3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will

carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

## II.   ISSUES

In his brief, Dickerson presents the following issues:

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence as the ALJ failed to resolve inconsistencies between and articulate the weight assigned to the opinion evidence in the record; and

2. Whether the ALJ erred at Step Five in applying the incorrect standard and failing to articulate a reasoned decision.

(Pl.'s Br. at 1, 8-15.)

## III.   ALJ DECISION

In her October 24, 2013 decision, the ALJ found that Dickerson had not engaged in any substantial gainful activity since November 13, 2012, the date Dickerson applied for SSI disability. (Tr. 32.) The ALJ further found that Dickerson suffered from the following severe impairments: (1) HIV, (2) affective disorder, and (3) obesity. (Tr. 32-33.) Next, the ALJ held that none of Dickerson's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 33-37.)

As to Dickerson's RFC, the ALJ stated:

> Based upon the medical evidence and the subjective complaints of the claimant (SSR 96-4p), as supported by the record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c); i.e., lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk six hours during a normal eight-hour workday and sit six hours during a normal eight-hour workday; with pushing/pulling unlimited except as indicated for lifting/carrying; avoiding concentrated exposure to fumes, odors, dust, chemicals, etc. while in the performance of simple, routine, repetitive-type job tasks; involving only simple, work-related decisions; with few, if any, workplace changes; and interpersonal contact being incidental to the work performed.

4

(Tr. 38 (emphasis omitted); *see* Tr. 38-39.) The ALJ then found that Dickerson had no past relevant work. (Tr. 39.) Finally, based upon the testimony of the VE, the ALJ found that Dickerson was capable of performing other jobs existing in significant numbers in the national economy. (Tr. 39-40.) Accordingly, the ALJ found that Dickerson was not disabled. (Tr. 40-41.)

### III. DISCUSSION

#### A. RFC Determination

In his brief, Dickerson claims that the ALJ's RFC determination is not supported by substantial evidence as the ALJ failed to resolve inconsistencies between and articulate the weight assigned to the opinion evidence in the record. (Pl.'s Br. at 1, 8-12.) Dickerson argues that the ALJ failed to address a material inconsistency in the evidence of whether Dickerson could do sustained work activities on a regular and continuing basis. (Pl.'s Br. at 8.) Dickerson states:

> Social Security law regarding evaluating opinion evidence is simple, but unambiguous: Accept and include or reject and explain. If the ALJ accepts the opinion of a medical source, then he must include the limitations identified by that medical source in his RFC finding. If the ALJ does not accept all or parts of a medical opinion, then the ALJ must explain his reasons for rejecting the probative evidence he did not accept. If the ALJ's RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Social Security Ruling 96-5p provides that an adjudicator must explain the consideration given to each medical source opinion.

(Pl.'s Br. at 9 (internal citations, quotations, and footnotes omitted).

Dickerson claims that while the ALJ stated that the opinion of Deborah Whitehead Gleaves, Ph.D. ("Dr. Gleaves") was persuasive, the ALJ failed to discuss that portion of her opinion that Dickerson was incapable of full time competitive work. (Pl.'s Br. at 10-11.)

5

Dickerson further states that, while State Agency Medical Consultant Veena Ghai, M.D. ("SAMC Ghai") opined that Dickerson could "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, get along adequately with coworkers and supervisors, and respond appropriately to changes in routine work settings" and could function effectively on a sustained basis, the ALJ did not even mention such report in her decision. (Pl.'s Br. at 10-11.) Dickerson claims that the ALJ's decision should be reversed because the "ALJ made no findings as to resolve the inconsistency between the opinions of Dr. Gleaves and Dr. Ghai" regarding performing work activities on a sustained basis. (Pl.'s Br. at 12.)

RFC is what an individual can still do despite his limitations.[1] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart,* 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") The ALJ is responsible for assessing a claimant's RFC based on all of the relevant evidence in the record. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005); *see* 20 C.F.R. § 416.946(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez*

*v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 416.927(b), (d)(1). Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. § 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In this case, as stated above, the ALJ determined that Dickerson had the RFC to perform medium work except that he was limited to, as relevant here, perform simple, routine, repetitive-type job tasks involving only simple, work-related decisions with few, if any workplace changes, and only incidental interpersonal contact. (Tr. 38.) In making such determination, the ALJ, in an earlier section, stated, "In reaching [the step three] finding, I considered the opinions of the

8

State Agency medical consultants[3] who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (Tr. 33.) In addition, the ALJ, *inter alia*, considered the following evidence regarding Dickerson's mental impairments: (1) treatment notes dated April 2013 which indicated that (a) Dickerson's depression seemed stable on Citalopram and (b) Dickerson denied hearing voices, having suicidal thoughts, or experiencing mood swings (Tr. 35; *see* Tr. 627-28); (2) May 2013 treatment notes indicating Dickerson was negative for suicidal ideas, hallucinations, behavioral problems and self-injury, and positive for dysphoric mood (Tr. 35; *see* Tr. 612-13; (3) a psychiatric evaluation dated June 4, 2013 in which Dickerson stated, *inter alia*, he had been residing at the Union Gospel Mission and enjoyed helping the workers there and was diagnosed with depressed type schizoaffective disorder with PSD (alcohol, cocaine, cannabis) that was in sustained full remission and borderline intellectual functioning (Tr. 35-36; *see* Tr. 564-69); (4) July 2013 treatment notes indicating that Dickerson's depression seemed stable (Tr. 36; *see* Tr. 607); (5) August 2013 treatment notes again indicating that Dickerson's depression seemed stable (Tr. 36; *see* Tr. 585); and (6) a February 2013 consultative mental status examination with Dr. Gleaves (Tr. 35; *see* Tr. 501-06).

In addition, the ALJ stated:

> I find the claimant has reported that while residing in the shelter, he shops in stores for products and food; can pay bills, count change, handle a savings

---

[3] SAMC Ghai opined in a mental RFC assessment dated March 13, 2013, that Dickerson could understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, get along adequately with coworkers and supervisors, and could adapt to changes in routine work settings. (Tr. 85-88.) In addition, SAMC stated, "Although somewhat limited by his depressed mood and lack of motivation, the overall impact of these symptoms does not wholly compromise his ability to function independently, appropriately, and effectively on a sustained basis."

account, and use a checkbook/money orders. He pursues hobbies that include reading and watching television on a daily basis. He spends time with others talking and walking. He regularly attends church; goes to town, and goes to the store. He does not need someone to accompany him. He has reported he can lift only 25 pounds and only walk up to five blocks a day. He can pay attention pretty good. While he has reported that he has to be told twice in order to follow spoken instructions, he has reported following written instructions well. He has reported getting along well with authority figures; maintains the ability to handle stress; adapts to changes in routine; and has difficulty being around chemicals and dust so he has to keep his area clean in order to breathe properly. Although he has reported side effects of drowsiness and dizziness to two of his prescribed medications, he has also reported he does not need anyone to accompany him and is able to use public transportation. (Exhibit 4E).

(Tr. 37.) As to Dr. Gleaves' opinion, the ALJ noted:

> Further in February 2013, the claimant [sic] when the claimant underwent a consultative clinical interview with mental status examination, he reported he was taking medication prescribed by MHMR for depression and anxiety that helped. He reported attending NA twice weekly; seeing a nurse practitioner every two weeks for medications; being independent with basic activities of daily living; attending church; and stated that [he] got along well with staff members at the shelter where he was residing. The examiner reported that during the evaluation, the claimant demonstrated some mild difficulty with tasks requiring attention and concentration. She estimated the claimant has average intelligence and diagnosed recurrent severe major depression disorder with psychosis and cocaine abuse in full sustained remission. Further, the examiner opined the claimant was mildly to moderately impaired in the ability to make personal and social adjustments. [Exhibit 4F). I find this one-time examination consultative evaluation to be persuasive.

(Tr. 35.) Moreover, the ALJ stated:

> I have considered all of the medical evidence of record. While I have not specifically recited and described each medical exhibit in the record, I have considered them in making my decision. . . . No treating physician has documented a medically determinable impairment that would prevent the claimant from engaging in substantial gainful work activity.
>
> Thus, I find that neither the objective medical evidence nor any other non-medical evidence establishes that the claimant's ability to function is so severely impaired as to preclude the performance of all work activities. The record contains no objective signs of an incapacitating impairment.

10

>Accordingly, I find that the record as a whole, including the claimant's testimony and the objective medical evidence and reasonable inferences therefrom, do not support the conclusions that he is incapable of performing any level of sustained work activity. I find no symptoms of the level of severity to wholly compromise his ability to initiate and sustain activities and function independently and effectively on a sustained basis.

(Tr. 39.)

Contrary to Dickerson's claim, the ALJ's RFC determination is supported by substantial evidence. In this case, the ALJ noted that, while he had not specifically recited and described every medical exhibit in the record, he considered them in making his decision. As to the opinions of Dr. Gleaves and SAMC Ghai brought up by Dickerson, it is clear that the ALJ considered them both. While the ALJ did not specifically discuss the particulars of SAMC Ghai's opinion, the ALJ was obviously aware of such opinion as she specifically stated that she had "considered the opinions of the State Agency medical consultants" (Tr. 33) as well as "all the medical evidence of record" (Tr. 39). In addition, the ALJ specifically discussed Dr. Gleaves' opinion and gave it "persuasive" weight. The ALJ properly considered the evidence as a whole, utilizing not only parts of Dr. Ghai's RFC assessment and Dr. Gleaves' opinions, but also the other evidence in the record that included several medical records and Dickerson's testimony to determine Dickerson's RFC and the effect Dickerson's impairments had on his ability to work. *Muse*, 925 F.2d at 790 (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")). Even more, the ALJ appropriately discounted the portions of Dr. Gleaves' opinion regarding Dickerson's inability to function in a full-time competitive work force on a sustained basis as such opinion

11

was unsupported or inconsistent with the overall evidence. *See* 20 C.F.R. § 416.927(c) (supportability and consistency are factors for the ALJ to consider when he weighs a medical opinion); *see also Andrews v. Astrue*, 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013) (with nontreating physicians' opinions, an ALJ is free to incorporate only those limitations that he finds to be consistent with the weight of the evidence as a whole). Based on the above, it is clear that the ALJ discussed the evidence in the record in making his disability determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

Even assuming the ALJ erred in failing to adequately discuss the written details of every medical examination in the record or certain specific findings made by Dr. Gleaves or SAMC Ghai regarding Dickerson's ability to perform work functions on a sustained basis, any error would be harmless as "[p]rocedural perfection in administrative proceedings is not required as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *see, e.g., Wilson v. Colvin*, No. 4:13-CV-891-A, 2015 WL 864862, at *8 (N.D. Tex. Feb. 27, 2015) ("Because substantial evidence supports the ALJ's RFC determination, any error relating to the failure of the ALJ to properly analyze [the doctor's] opinions would be harmless error."); *Black v. Colvin*, No. 2:12-CV-0233, 2014 WL 1116682, at *4 (N.D. Tex. Mar. 20, 2014) ("Case law likewise indicates an ALJ need not explain in his or her written determination all evidence contained in the record."); *Penalver v. Barnhart*, No. SA–04–

CA–1107–RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment-he need not discuss all supporting evidence or evidence rejected."); *Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 514-17 (S.D. Tex. 2003). In this case, as set forth above, it is clear that substantial evidence supports the ALJ's determination. Consequently, remand is not required.

### B. Incorrect Standard at Step Five[4]

Dickerson also argues that the ALJ used the incorrect standard at Step Five and failed to articulate a reasoned decision. (Pl.'s Br. at 1, 12-15.) While very difficult to understand the precise basis for his argument, it appears that Dickerson is complaining about the organization of the ALJ's decision and the ALJ's word choice in parts of the decision. (Pl.'s Br. at 12-13.) Dickerson claims that the ALJ incorrectly refers to standards related to her decision at step 3 when making the RFC determination and the ALJ cites no evidence supportive of the limitations found. (Pl.'s Br. at 12.) Dickerson further argues the ALJ based the RFC determination on an incorrect standard of, in essence, being unable to perform all work activities instead of looking at all his impairments and determining the most he can do despite his limitations. (Pl.'s Br. at 12.) Dickerson claims the ALJ improperly determined he was not disabled during the RFC

---

[4] The Court notes that, in his reply, Dickerson raises a new issue that the ALJ erred at Step 5 in not incorporating "the important limitation of sustainability from Dr. Gleaves report (which was given the most weight)." (Plaintiff's Reply at 7.) The Court, however, has already found that the ALJ did not err by not addressing this limitation. In addition, the Court will not address arguments raised for the first time in a reply brief. *See Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008) ("[A]rguments cannot be raised for the first time in a reply brief.").

determination as opposed to properly addressing the relevant inquiries at steps 4 and 5. (Pl.'s Br. at 13-14.)

While the ALJ's decision could have been better organized and more artfully worded, the Court disagrees that the ALJ did not follow the proper steps and set forth the proper standards in making her determinations. Prior to her analysis, the ALJ set forth the five-step disability analysis (Tr. 30-32), and it is clear that she understood such process and properly followed such process. Moreover, the ALJ is not required to follow formalistic rules of articulation. *See, e.g., Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir.1994) ("That [the ALJ] did not follow formalistic in articulation compromises no aspect of fairness or accuracy that this process is designed to ensure."); *Hunt v. Astrue,* 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013); *Rawls v. Astrue,* No. 4:10-CV-71-BJ, 2011 WL 725279, at *13 (N.D. Tex. Mar. 2, 2011). Consequently, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28

U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 10, 2016** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 27, 2016.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE